

JOHN D. SIMMONS
(302) 394-6001 direct
(215) 965-1331 facsimile
jsimmons@panitchlaw.com

July 5, 2023

**BY CM/ECF & HAND DELIVERY**

The Honorable Christopher J. Burke
J. Caleb Boggs Federal Building
844 N. King Street
Unit 28, Room 2325
Wilmington, DE 19801-3555

      Re: *ImmerVision, Inc. v. Apple Inc., C.A. 1:21-cv-1484, 1570, and 1733-MN-CJB*

Dear Judge Burke:

      This letter is submitted on behalf of Plaintiff ImmerVision, Inc. ("ImmerVision") pursuant to the Court's Oral Order setting a teleconference to resolve a discovery dispute (D.I. 113) in C.A. 21-1484, (D.I. 114) in C.A. 21-1570, and (D.I. 133) in C.A. 21-1733.[1] Apple Inc. ("Apple") should be compelled to produce its optical design files, which are core technical documents, under the currently existing Protective Order (D.I. 40).

## Background

      ImmerVision served Apple with its First Set of Requests for Production ("RFP") on July 26, 2022. (Attached hereto as Exhibit A ("Ex. A")). There is no dispute that Apple's optical design files are responsive and relevant.

      Under the Scheduling Order (D. I. 26) ¶ 7(c), Apple was to "…produce **core technical documents** related to the accused product(s), sufficient to show how the accused product(s) work(s), including but not limited to non-publicly available operation manuals, product literature, schematics, and specifications." On September 23, 2022, Apple's counsel emailed ImmerVision's counsel (Ex. B) stating, *inter alia*, "…the documents we have identified for **Apple's core technical production include lens-definition files** that require particularized software to be opened and reviewed. We intend to make these documents available for inspection and review on a computer equipped with the necessary software. Because of the extremely sensitive nature of these files, Apple views them as akin to source code and believes that similar protections are warranted."[2] ImmerVision replied by letter the same day (Ex. C) ***disagreeing*** that these "lens-definition files"[3] are akin to source code. ImmerVision further

---

[1] For simplification, this letter will reference docket entries for C.A. 21-1484, hereinbelow, since all three cases were consolidated for discovery but do not have identical docket entries.

[2] Apple admits that optical or lens design files are core technical documents that should have been produced.

[3] These files are more commonly referred to as "optical design files" or "lens design files" that are created using an industry known optical design program called OpticStudio by Zemax. (See,

pointed out that the documents were known when the Protective Order was negotiated, and therefore, should be produced. The parties had a meet-and-confer on September 29, 2022, wherein the parties discussed discovery disputes and ImmerVision maintained its position that "lens-definition files" are *not* akin to source code and should be produced. Apple proposed an additional protective order to treat the files like source code. On that call, we reiterated that these files are *not* like source code, but are no different than product specifications that must be produced. Apple requested time to consider alternative proposals for discussion.

On September 30, 2022, Apple produced its core technical documents, but did *not* include the optical design files. Under the Scheduling Order (D. I. 26) ¶ 8(b), document production was to be substantially complete by March 31, 2023. On March 31, 2023, Apple produced 22,789 pages of documents which included about 55 slip sheets reading "[t]his document has been produced on the source code machine."[4] Apple requested time to investigate and replied that these slip sheets were for Zemax OpticStudio ("Zemax") files which it was continuing to collect. (Ex. E). Apple again proposed an additional protective order On May 10, 2023, a further meet-and-confer was conducted, and Apple disclosed that after an investigation, the optical design files cannot be accessed remotely. Accordingly, Apple takes the position that these optical design files are as sensitive as source code (*i.e*., more sensitive than HIGHLY CONFIDENTIAL documents) and should be produced on a secured computer that can only be visited by ImmerVision's technical expert during business hours at Apple's attorney's offices. See Ex. F at ¶ 5 ("Any Source Code that is produced by Apple Inc. will be made available for inspection at the Chicago office of its outside counsel, Goldman Ismail Tomaselli Brennan & Baum LLP, or any other location mutually agreed upon by the Parties.")

Apple still has not produced optical design files. Apple does not deny that these optical design files are responsive to ImmerVision's RFPs and the core technical document disclosures.

## ARGUMENT

The real dispute is not whether optical design files are responsive and should be produced. The dispute is whether the existing, heavily negotiated and stipulated Protective Order (D.I. 40) is sufficient protection for Zemax optical design files.

The Protective Order provides for designating documents HIGHLY CONFIDENTIAL. (D.I. 40) at ¶¶ 2, 7-8, 10-13, and 15-19. This includes information that is "competitively sensitive, including, but not limited to, trade secrets or other confidential research, development, or commercial information … and that its disclosure to business competitors or the public would be injurious to the business, commercial, or financial interests of the designating party." *Id.* at ¶ 10(b). All counsel of record and the expert witnesses are bound by this Protective Order to not use HIGHLY CONFIDENTIAL information for any purpose except this litigation. *Id*. at ¶ 6. All HIGHLY CONFIDENTIAL information "must be stored and maintained by a Receiving Party at a location in the United States and in a secure manner that ensures that access is limited to the persons authorized under this Order." *Id.* at ¶ 8.

At the time the parties were negotiating the Protective Order, Apple knew that optical design files would be included in the HIGHLY CONFIDENTIAL information. (D.I. 40) at ¶ 7

---

https://www.zemax.com). There are other commonly used optical design programs such as Code V by Synopsis. (See, https://www.synopsys.com/optical-solutions/codev.html).
[4] See Ex. D, April 21, 2023 email from ImmerVision's counsel to Apple's counsel.

("'HIGHLY CONFIDENTIAL –ATTORNEYS' EYES ONLY' and includes technical information regarding the functionality, operation, and design of [] wide-angle camera lenses for use in mobile devices…"). The Protective Order was entered after months of negotiation on August 26, 2022, about a month before the September 30th deadline to produce core technical documents. Apple knew these optical design files were covered by the existing Protective Order and is now trying to renegotiate the Protective Order.

The subject optical design files are created using Zemax, which is a third-party, off-the-shelf software program. Zemax files can be shared with others who have the software, just like an AutoCAD drawing file can be shared with others who have AutoCAD or a Microsoft Excel spreadsheet can be shared with others who have Excel. Optical design software creates a model of an optical system or lens that can be tested and analyzed for image quality such as modulation transfer function (MTF) and relative illumination and to view the number of lenses and shapes of the lenses in an optical system. See, Zemax.com in FN 3. The optical design files are *not* source code.[5]

Apple proposes another protective order that has the protections typically allotted only to source code including inspection on a secure computer at its attorneys' offices. See Ex. F at ¶ 5 This additional level of protection is unwarranted in view of the existing Protective Order (D.I. 40) and its built-in protections. As explained to Apple during several meet-and-confers, it is **unduly burdensome** for ImmerVision's expert, who lives near and works at the California Institute of Technology, in Pasadena, CA, to take time away from his day job to travel to Apple's attorneys' offices in Chicago during business hours to review the optical design files on a secure computer. These optical design files are highly relevant to ImmerVision's expert's infringement analysis, are core technical documents showing how the accused products work, are akin to operation manuals, product literature, schematics, and specifications, and should be produced under the terms of the existing Protective Order.

## CONCLUSION

There is nothing top secret about an optical design file that renders it more than HIGHLY CONFIDENTIAL under the existing Protective Order (D.I. 40). ImmerVision respectfully requests an order compelling Apple to produce its relevant Zemax optical design files under the existing Protective Order (D.I. 40).

Respectfully submitted,

*/s/ John D. Simmons*
John D. Simmons (#5996)

Attachments

cc: All Counsel of Record (by CM/ECF)

---

[5] Source code is generally understood to mean programming statements that are created by a programmer with a text editor or a visual programming tool and then saved in a file typically to be compiled into an executable program. See e.g., https://www.washington.edu/research/glossary/source-code-and-object-code and 15 CFR 772. Zemax optical design files are not compilable and cannot be opened with a text editor.