

1313 North Market Street
P.O. Box 951
Wilmington, DE 19899-0951
302 984 6000
www.potteranderson.com

David E. Moore
Partner
Attorney at Law
dmoore@potteranderson.com
302 984-6147 Direct Phone

July 12, 2023

**VIA ELECTRONIC-FILING**

The Honorable Christopher J. Burke
U.S. District Court for the District of Delaware
J. Caleb Boggs Federal Building
844 N. King Street
Wilmington, DE 19801

Re:   *ImmerVision, Inc. v. Apple Inc.* (C.A. No. 21-1484, 1570, and 1733-MN-CJB)

Dear Judge Burke:

This is a simple Protective Order dispute. Apple already has agreed to produce the discovery that ImmerVision seeks—namely, the prescriptions for the accused Apple lenses, which ImmerVision refers to as "optical design files." These lens prescriptions contain the non-public, highly technical details necessary to fabricate Apple's proprietary, industry-leading lens designs—information not found in the other technical documents Apple has produced. The parties' sole dispute is what protections should be required for discovery of these lens prescriptions. Apple respectfully submits that, because lens prescriptions are, in effect, the source code of lenses, they are as commercially sensitive as any other form of source code. And because source code is routinely protected with heightened safeguards by this Court, Apple's lens prescriptions should therefore also be afforded such heightened protections. Tellingly, ImmerVision fails to identify any meaningful prejudice for providing such protections. To effectuate these protections, Apple respectfully asks the Court to enter its proposed Supplemental Protective Order (D.I. 121, Ex. F).[1]

**Good Cause Supports Heightened Protections for Apple's Lens Prescriptions Because They Can Be Used to Reverse Engineer Apple's Lenses, and Are Thus Similar to Source Code**

"A party seeking a protective order over discovery materials must demonstrate that 'good cause' exists for the protection of that material." *Glenmede Trust Co. v. Thompson*, 56 F.3d 476, 483 (3d Cir. 1995); *see* Fed. R. Civ. P. 26(c)(1). As explained below, Apple has established good cause, supported by expert and fact witness declarations, to grant additional protections to its proprietary lens prescriptions, which are uniquely sensitive because they can be used to fabricate Apple's accused lenses. ImmerVision offers only unsubstantiated attorney argument in response.

The lens prescriptions at issue are embodied in Zemax Archive files ("Zemax files"). These files, which are used with a lens-design and -analysis program called OpticStudio, reflect the detailed designs of the lenses of Apple's accused Ultra Wide cameras. (Ex. A, Declaration of Jack Feinberg, ¶¶ 9–10.) A Zemax file compiles detailed information about a lens, including the exact

---

[1] All docket citations refer to C.A. No. 21-1484-MN-CJB.

The Honorable Christopher J. Burke
July 12, 2023
Page 2

physical dimensions and arrangement of the lens's optical elements, their materials, and their overall layout, which is commonly to referred to as a "lens prescription." (*Id.*, ¶¶ 9–10, 12.) The Zemax files here contain Apple's proprietary lens prescriptions (Ex. B, Declaration of Regis Tessieres, ¶¶ 6–7) and thus contain the information a lens designer would need to model, fabricate, and test lenses having Apple's proprietary designs (Ex. A, ¶¶ 11–12). Apple's proprietary lens prescriptions result from years of research and development. (Ex. B, ¶ 6.) Inadvertent disclosure of these lens prescriptions would cause significant commercial harm to Apple, as it would allow anyone who gained access to them to replicate the lenses and to bypass the difficulties and costs of designing similarly high-performing lenses for themselves. (*See* Ex. A, ¶¶ 14–17.)

Apple's request for supplemental protection for its lens prescriptions is consistent with prior decisions in this District. For instance, courts in this District have found that hardware-based code that provides the design information needed to fabricate integrated circuit chips is also "source code" that warrants heightened discovery protections. *Fraunhofer–Gesellschaft Zur Förderung Der Angewandten Forschung E.V. v. Sirus XM Radio Inc.*, C.A. No. 17-184-JFB-SRF, 2017 WL 4564742, at *2 (D. Del. Oct. 13, 2017) (citing *HSM Portfolio LLC v. Fujitsu Ltd.*, C.A. No. 11-770-RGA, 2013 WL 12233636, at *1 (D. Del. Jan. 9, 2013)). Because Apple's lens prescriptions can be used to fabricate Apple's lens designs, just as the hardware-based code in *Sirus* could be used to fabricate integrated circuit chips, Apple's Zemax files containing its proprietary lens prescriptions likewise warrant heightened protections. (Ex. A, ¶¶ 12, 17–18.) Indeed, other courts have entered additional source-code-level protections that the parties agreed apply to the very type of lens prescriptions at issue here. (*See, e.g.,* ECF No. 77, *Corephotonics, Ltd. v Apple Inc.*, Case No. 5:17-cv-06457-LHK, N.D. Cal.)

Further, Apple's request for additional protections for its lens prescriptions is consistent with its internal treatment of these materials. In particular, given the particularly sensitive nature of its lens prescriptions, Apple subjects them to access controls beyond those applicable to other confidential or proprietary material. (Ex. B, ¶ 8.) The Zemax files that embody Apple's lens prescriptions are stored in access-controlled repositories by Apple's Camera Optics Design team. (*Id.*) Access to such repositories is granted only on a need-to-know basis to a limited subset of Apple employees. (*Id.*) Similarly, Apple shares its Zemax files with suppliers who manufacture the lenses for Apple's devices only on an as-needed basis and only to those who have contractual obligations to maintain the secrecy of Apple's lens prescriptions. (*Id.*, ¶ 9.)

In its opening letter, ImmerVision makes two main arguments. Neither can defeat Apple's showing of good cause. First, ImmerVision asserts that the Zemax files at issue "are akin to operation manuals, product literature, schematics, and specifications, and should be produced under the terms of the existing Protective Order." (D.I. 121 at 3.) Not so. As confirmed by the declaration of Dr. Feinberg, an optics professional with decades of experience in the field, other types of technical documents which describe a lens, such as schematics, specifications, and diagrams, do not provide the level of detail that enables a lens designer to model or reconstruct the lens in the way a lens prescription would. (Ex. A, ¶¶ 6, 13.) The design and fabrication of Apple's mobile device camera lenses must be extremely precise to ensure its products work as intended and meet high performance standards. (*See id.*, ¶ 14.) In such lenses, the size of individual optical elements is on the order of millimeters. (*Id.*) As Dr. Feinberg explains, given this level of precision, it would be extremely difficult, if not impossible, to reverse engineer and fabricate the design of Apple's lenses accurately from other technical documents—which provide only approximate

The Honorable Christopher J. Burke
July 12, 2023
Page 3

descriptions of the tiny lens elements—or from examining the physical lens itself. (*See id.*, ¶¶ 14–17.) Just as the hardware-based code in *Sirius* was entitled to additional protection as "source code" because it provided sensitive information that other diagrams and schematics did not, 2017 WL 4564742, at *2, so too should Apple's lens prescriptions be given additional protections akin to source code.

Second, ImmerVision asserts, without any support, that "optical designs files are ***not*** source code" (emphasis in original) because "Zemax files can be shared with others who have the software, just like an AutoCAD drawing file can be shared with others who have AutoCAD or a Microsoft Excel spreadsheet can be shared with others who have Excel." (D.I. 121 at 3.) This argument is non-sensical. By ImmerVision's own admission, source code files are created with a "text editor or a visual programming tool" (*Id.* at 3, n.5) and can be shared with and viewed by anyone with a compatible editor. The ability to share such files does not change the fact that they are source code. Apple's Zemax files are extremely sensitive even though they can be viewed using optics software, just as source code is extremely sensitive even though it can be viewed with a text editor.

ImmerVision's remaining complaints relate to the timeliness of Apple's proposal and the purported prejudice that the additional protections would cause. These complaints are irrelevant and unfounded. On timeliness, ImmerVision argues that Apple is trying to "renegotiate the Protective Order" that was entered earlier in the case. (D.I. 121 at 3.) Not so. Apple's request is expressly contemplated by the existing Protective Order. Specifically, the parties agreed to revisit additional protections regarding source code or "materials requiring an equivalent level of protection," and to "confer in good faith to seek agreement on a proposed order regarding such additional provisions." (D.I. 40, ¶ 10(c).) Apple has repeatedly told ImmerVision about the need for additional protections for its lens prescriptions—starting in September when Apple first sent a proposed inspection protocol. (D.I. 121 at 1, Ex. B.). Months later, Apple again proposed a Supplemental Protective Order. (Ex. C at 2; D.I. 121 at Ex. F.) Apple has thus raised this issue in a timely manner and consistent with the parties' written expectations.

As to purported prejudice, ImmerVision's sole complaint is that it would be "unduly burdensome" for its expert to travel from Los Angeles to Apple's counsel's offices in Chicago to inspect Zemax files. (D.I. 121 at 3.) That complaint is without merit. Apple has already offered to produce its Zemax files on a secured computer in either Santa Monica (less than an hour's drive from ImmerVision's expert in Pasadena) or Delaware (where ImmerVision chose to file suit). ImmerVision has not explained why those locations would be "unduly burdensome." But in any event, Apple's proposed Supplemental Protective Order permits production at any "mutually agreed" location, and Apple remains available to confer. (*Id.* at Ex. F at 5.) ImmerVision should not be heard to complain about prejudice when it has refused to confer on *any* of the specific terms and substance of Apple's proposal, let alone the location.

## Conclusion

Apple's lens prescriptions, unlike any other technical documentation, would enable a lens maker to fabricate Apple's Ultra Wide lenses. They should be afforded heightened protections akin to source code, as Apple proposes. Apple respectfully requests the Court enter Apple's proposed Supplemental Protective Order.

The Honorable Christopher J. Burke
July 12, 2023
Page 4

Respectfully,

*/s/ David E. Moore*

David E. Moore

DEM:nmt/10912797/12209.00047

Enclosures

cc:      Clerk of Court (via hand delivery)
         Counsel of Record (via electronic mail)